UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

UNITED STATES OF AMERICA              CASE NO. 21-cr-00130-02

VERSUS                                CHIEF JUDGE HICKS

ALEXANDER D PENNINGTON (02)           MAGISTRATE JUDGE HORNSBY

### REPORT AND RECOMMENDATION

**Introduction**

Alexander Pennington ("Defendant") is charged with conspiracy to advertise the distribution of child pornography, conspiracy to distribute child pornography, and seven counts of distribution of child pornography. Doc. 26. The charges arise from Defendant's alleged involvement in private Kik chat groups that were dedicated to the advertisement and distribution of child pornography.

Agent Tyson Walch of Homeland Security obtained a search warrant for Defendant's residence in Las Vegas, NV. During the execution of that search warrant, Agent Walch conducted two recorded interviews with Defendant.

Before the court is **Defendant's Motion to Suppress. Doc. 55**. Defendant argues that he invoked his right to counsel at the beginning of a custodial interrogation, but Agent Walch failed to honor his request. For the reasons set forth below, it is recommended that Defendant's Motion to Suppress be denied.

**Facts**

An evidentiary hearing was held on April 12, 2022.  The evidence at the hearing, along with the two audio recordings of Defendant's interviews, established the following facts.  During an investigation of private chat groups on Kik that were dedicated to the advertising and distribution of child pornography, agents identified a member of the Kik groups.  That member gave agents consent to assume his online identity in the groups.

The Kik groups were managed by a master administrator and several sub-administrators.  The master administrator's profile avatar is a green circle with a picture of a crown.  Sub-administrators' profile avatars are an orange circle with a picture of a crown.  New members were admitted to the groups by invitation only.  Users who did not post child pornography were removed from the groups.

Agents identified a user going by the name of grimka00 as a sub-administrator of the Kik groups.  Grimka00 stated she was a single female who engaged in regular sexual activities with her infant daughter.  An examination of the Kik groups showed grimka00 soliciting, receiving, and distributing child pornography.

Further investigation revealed that the IP address used by grimka00 was assigned to Defendant's residence in Las Vegas.  Agents procured a search warrant for the residence. The agents breached the front door of Defendant's residence and, using a bullhorn, called for all occupants to come outside.  Defendant, his mother, and his uncle exited.  The three were placed in handcuffs for about five minutes during a protective sweep of the residence. After that, the handcuffs were removed.

Defendant's mother and uncle remained in or near the residence. Agent Walch asked Defendant if he would speak with him. The temperature was warm outside, so Agent Walch asked Defendant to sit in his Toyota Highlander so that they would have the benefit of air conditioning. Walch did not want Defendant in the residence while the search was being conducted because he feared evidence might be destroyed.

Agent Walch told Defendant he was not under arrest and that his vehicle doors were unlocked. Defendant sat in the front passenger seat, Walch was in the driver's seat, and Detective Chen, an employee of the Las Vegas Police Department, sat in the rear seat.

Agent Walch produced from his pocket a digital recorder, and Defendant expressed concern. Defendant told Walch that if Walch was going to record the interview, Defendant wanted an attorney. Walch explained to Defendant why he records his interviews (so no one can say the person being interviewed said something that he or she did not really say). With the benefit of that explanation, Defendant withdrew his objection to being interviewed without an attorney.

Agent Walch turned on the recorder and advised Defendant of his Miranda rights. Defendant stated that he understood his rights and was willing to talk. Defendant never said anything else about an attorney until the end of the second interview when Defendant asked if he could look through his phone to find a telephone number for an attorney. The second, brief interview concerned a letter found during the search and is not relevant to this motion.[1]

---

[1] The Government did not produce the audio of the second interview until just before the suppression hearing. However, after listening to the recording, defense counsel graciously agreed

Defendant testified that the recordings are not true and accurate recordings, because the recordings do not capture his numerous requests for an attorney. Defendant contends that Agent Walch turned the recorder off and on to conceal his requests for an attorney. The undersigned finds Defendant's testimony not credible. Agent Walch's testimony, which the undersigned finds very credible, is consistent with what the recordings actually reveal.

**Law and Analysis**

   **A. Was Defendant in Custody?**

In Miranda v. Arizona, 374 U.S. 436 (136), the Supreme Court established rules of police procedure applicable to custodial interrogation. These rules require that a defendant be given a "full and effective warning of his rights at the outset of the interrogation process." Id. at 445. If a suspect waives his right to counsel after receiving Miranda warnings, officers are free to question him, but if the suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation. Edwards v. Arizona, 101 S.Ct. 1880 (1981).

Miranda only applies to custodial interrogation. Custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. Id. at 444. When a person is not under arrest prior to questioning, the appropriate inquiry is whether, at the

---

that the hearing could go forward as scheduled. The belated production of new audio/video has become a recurring problem in this division. If it continues, sanctions will be imposed.

time of the questioning, the person was subject to a "restraint on freedom of movement of the degree associated with a formal arrest." California v. Beheler, 463 U.S. 1131, 1125 (1983), quoting Oregon v. Mathiason, 429 U.S. 492, 495 (1977). This inquiry is determined from the view of "how a reasonable man in the suspect's position would have understood his situation." Berkemer v. McCarty, 468 U.S. 420, 442 (1984). The Fifth Circuit has identified being "isolated, physically restrained, or coercively questioned" as "the hallmarks of a custodial interrogation." United States. v. Hendler, 821 Fed. App'x 365, 366 (5th Cir. 2020).

Defendant was not in custody during either interview. He was handcuffed for only about five minutes while the agents conducted a protective sweep of the residence. Once that was done, the handcuffs were removed, and Defendant was not handcuffed again. Walch explained to Defendant that he was not under arrest, he was free to get out of the vehicle at any time, and the doors to the vehicle were unlocked. Additionally, both Agent Walch and Detective Chen were dressed in plain clothes, their duty weapons were hidden underneath their clothes, and the interviews took place inside an unmarked Toyota Highlander. District courts in this circuit have often found that similar questioning in a police vehicle was not a custodial interrogation. U.S. v. Jin, 2021 WL 6137594, *4 (E.D. Tex. 2021) (collecting cases).

The fact that Walch advised Defendant of his Miranda rights does not convert a non-custodial interview into a custodial interrogation. In United States v. Akin, 435 F.2d 1011, 1013 (5th Cir. 1970), the Court explained:

> To rule that an FBI agent's extra-caution efforts to inform a person of his constitutional rights converts an otherwise non-custodial situation into a "custodial interrogation" could easily work to defeat one of the Supreme Court's main objectives in Miranda, the objective of encouraging law enforcement agencies to develop ways of protecting individual rights that are in harmony with effective law enforcement.

**B. Did Defendant Unambiguously Request Counsel?**

Even if Defendant was in custody during the interviews, which he was not, Defendant did not unequivocally invoke his right to counsel. In Davis v. United States, 512 U.S. 452 (1994), the Supreme Court held that law enforcement officers are not required to cease questioning when a suspect makes an ambiguous or equivocal request for counsel. The Supreme Court explained that "[i]f a suspect makes a reference that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning." Id. The Supreme Court iterated that "the suspect must unambiguously request counsel. As we have observed, 'a statement either is such an assertion for the right to counsel or it is not.'" Id., quoting Smith v. Illinois, 469 U.S. 91, 97-98 (1984).

Defendant initially requested an attorney if the interview was going to be recorded, but after hearing Agent Walch's explanation about the benefits of recording interviews, Defendant agreed to talk. Indeed, after the recording was turned on and the preliminary details such as date and time were mentioned, Walch read the Miranda warnings (including the right to an attorney) to Defendant, who stated that he understood his rights and agreed to talk. Walch then immediately emphasized to Defendant, "If you change your mind, you

can stop this conversation at any time." Defendant then asked, "Now that we are on the record, can you go ahead and tell me what it is?" Walch then explained that the agents had received a report about someone on an online platform claiming to be a single mom who was having sex with her baby, and the agents were trying to verify if there was a real baby being molested or whether the mom/baby scenario was just someone's fantasy.

Based on the foregoing, the undersigned finds that Defendant did not make an unequivocal and unambiguous right to an attorney. Instead, Defendant made a knowing and voluntary waiver of his Miranda rights and agreed to the recorded interview without counsel.

**Conclusion**

Defendant was never in custody and had no right to an attorney during the two voluntary interviews conducted by Agent Walch and Detective Chen. Defendant's equivocal and ambiguous request for an attorney was predicated on the interview being recorded, but when Agent Walch explained the reason why he wanted to record the interview, Defendant withdrew his objection and voluntarily participated in the interviews.

Accordingly,

It is recommended that Defendant's Motion to Suppress (Doc. 55) be denied.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Crim. P. 59(b)(2), parties aggrieved by this recommendation have **fourteen (14) days** from the date of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Crim. P. 45(b). A party may respond

to another party's objections within **fourteen (14) days** from the filing of the objections. Counsel are directed to furnish a paper copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendation set forth above shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 22nd day of April, 2022.

Mark L. Hornsby
U.S. Magistrate Judge